UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:20-cr-00242-KJM-3 |
| Plaintiff, | ORDER |
| v. | |
| Ivan Miranda-Rivera, | |
| Defendant. | |

Defendant Ivan Miranda-Rivera moves to revoke the magistrate judge's detention order. Mot., ECF No. 27; Reply, ECF No. 29. The government opposes. Opp'n, ECF No. 28. The court held a hearing on the motion to revoke on April 5, 2021, with Assistant Federal Defender Megan Hopkins appearing for defendant, and Assistant United States Attorney Samuel Stefanki appearing on behalf of the government. Hr'g Mins., ECF No. 31. The court permitted both parties leave to provide supplemental filings with relevant case citations. *Id.*; ECF Nos. 30, 32. Upon careful consideration of the record as a whole, the court **grants** the motion.

I. **BACKGROUND**

Mr. Miranda-Rivera is not a United States citizen, though he is seeking asylum here from his home country of Mexico and has lived here, without documentation, for three years now. Mot. at 5. He is connected to Mexico through his family and his finances: some of his family and

/////

1

his children live in Mexico and he owns a house and has an open line of credit there as well. *Id.* at 1 n.1.

In August 2020, law enforcement raided an illegal marijuana cultivation site in the Shasta-Trinity National Forest that consisted of more than 15,000 plants. Opp'n at 1–3. An agent came across Mr. Miranda-Rivera as he was walking down a path that connected the cultivation site with a nearby camp site. *Id.* at 3. Mr. Miranda-Rivera was arrested, and agents recovered a loaded gun from his right waistband. *Id.* The gun was "unregistered and display[ed] no serial number or other identifying markers." *Id.* at 6. Following his apprehension, Mr. Miranda-Rivera and his alleged co-conspirators were charged in an indictment, originally filed under seal. Sealed Indictment, ECF No. 1. Mr. Miranda-Rivera is charged in the indictment with conspiracy to manufacture marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), the manufacture of marijuana in violation of 21 U.S.C. §841(a)(1), and the depredation of public lands and resources in violation of 18 U.S.C. § 1361. *See generally* Redacted Indictment, ECF No. 13 (names redacted of co-defendants not yet apprehended). At his initial appearance, the government moved for Mr. Miranda-Rivera to be detained pending trial, as a flight risk and danger to the community. The duty magistrate judge set a detention hearing for March 5, 2021, for which a Pretrial Services report was prepared, suggesting Mr. Miranda-Rivera's proposed release plan overcame any potential danger he posed to the community, but not his flight risk, given the unsuitability of his proposed third-party custodian. Mot. at 1; Mins., Mar. 5, 2021 H'rg, ECF No. 21. The magistrate judge detained Mr. Miranda-Rivera, memorializing her order on a form indicating she found he had not overcome the presumption of flight risk or danger raised by the Title 21 charges against him. ECF No. 23.

On March 8, 2021, Mr. Miranda-Rivera moved for bail review, ECF No. 22, and a different duty magistrate judge heard the motion on March 15, 2021, ECF No. 26 (minutes). Mr. Miranda-Rivera proposed new third-party custodians and additional secured and unsecured bond resources, totaling more than $85,000. Mot. at 2. This duty magistrate judge denied the motion for bail review, finding Mr. Miranda-Rivera did not overcome the presumption that he was a flight risk. *See* ECF No. 26; Mot 2–3; Opp'n at 4.

On March 23, 2021, Mr. Miranda-Rivera moved this court for revocation of the detention order and release from pretrial detention under 18 U.S.C. § 3145. Mot., ECF No. 27; Reply, ECF No. 29. The government opposes. Opp'n, ECF No. 28. As noted, the court heard the motion on April 5, 2021. Hr'g Mins., ECF No. 31. Pretrial Services Officer Margarita Zepeda also attended the hearing and provided the court with an updated Pretrial Services report. *Id.*

## II. LEGAL STANDARD

A person "ordered detained by a magistrate judge, . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order. The motion shall be determined promptly." 18 U.S.C. § 3145(b). Under this provision, the district court conducts its own *de novo* review of the magistrate judge's detention order. *United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court "should review the evidence before the magistrate [judge] and make its own independent determination whether the magistrate [judge]'s findings are correct, with no deference." *Id*. at 1193. "[T]he district court, while empowered to do so, is not required to hold an evidentiary hearing when no evidence is offered that was not before the magistrate [judge]." *Id*.

Pretrial detention is justified if the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In this case, given the charges, there is a rebuttable presumption that no set of conditions will assure the defendants appearance and the safety of the community, given that "there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." 18 U.S.C. § 3142 (e)(3)(A). This presumption places a burden of production on the defendant, while the government maintains the burden of persuasion. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). The government must show "that no condition or combination of conditions will reasonably assure the safety of any other person and the community . . . by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). However, risk of flight need only be established "by a clear preponderance of the evidence, not by the higher standard of clear and convincing evidence." *United States v. Motamedi*, 767 F.2d 1403, 1406

(9th Cir. 1985). "A finding that a defendant is a danger to any other person or the community must be supported by 'clear and convincing evidence.'" *Hir*, 517 F.3d at 1086 (citing 18 U.S.C. § 3142(f)(2)(B)).

If the defendant rebuts the presumption with proffered evidence, "[t]he presumption is not erased," rather it "remains in the case as an evidentiary finding militating against release, to be weighed" against evidence relevant to the four factors outlined by § 3142(g). *Id.* at 1086 (citation and internal marks omitted). The court considers the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The history and characteristics of the person include the following: character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, record concerning appearance at court proceedings, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *Id*. The weight of the evidence has the least force in the court's analysis, in recognition of the presumption of innocence that attaches to defendant at the pretrial stage of a criminal proceeding. *Bell v. Wolfish*, 441 U.S. 520, 533 (1979); 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence.").

### III. ANALYSIS

The government clarified at hearing that it seeks to have Mr. Miranda-Rivera remain detained on the grounds he is a flight risk only. Mr. Miranda-Rivera argues he has rebutted the presumption of flight risk and that the balance of the factors set forth in 18 U.S.C. § 3142(g) weigh in favor of his release given his proposed release plan. Mot at 5–6.

#### A. Proposed Release Plan

Specifically, Mr. Miranda-Rivera offers to submit to location monitoring, submits three options for a third-party custodian and presents a substantial bond package. At hearing Officer

/////

Zepeda clarified for the court that location monitoring was available if the court chose to impose it as a condition.

Mr. Miranda-Rivera's three possible third-party custodians, with the availability of the first two verified by Pretrial Services, are as follows:

- His girlfriend Irma Lorena Silva Mendoza (Ms. Silva), who lives in Eureka, California, and has a U Visa application pending, and whose sister Monica Jacqueline Cisneros lives nearby and is also willing to serve as a co-third party custodian;
- Jose Mendoza who lives in Pacoima, California and is in a relationship with Mr. Miranda-Rivera's mother but not legally married to her; and
- Francisco Javier Davalos, who lives in Merced, California, whose bonafides Pretrial Services has not been able to verify.

Mot. at 5–6.

Mr. Miranda-Rivera's proposed bond package consists of the following amounts offered by third parties, totaling $103,000:

- $10,000 secured by cash posted by his brother-in-law, Carlos Elias Garcia Mendoza. Mot at 6.
- A bond secured by the title to Monica Cisneros's vehicle, a black 2012 Honda Accord, with the value estimated at $12,000. *Id.* at 6, 10.
- A bond secured by the vehicle co-owned by Lorena Silva and her brother Aureliano Silva Mendoza, a 2006 Nissan Titan, with the value estimated at $6,000. *Id.*
- A $50,000 unsecured bond signed by Monica Cisneros. *Id.*
- A $25,000 unsecured bond signed by Francisco Javier Davalos. *Id.*

Mr. Miranda-Rivera is willing to co-sign the bonds offered by Ms. Cisneros and Mr. Davalos. *Id.* The parties agree there is no practical method of arranging a bond secured by the full value of Mr. Miranda-Rivera's property in Mexico.

**B.    Summary of Parties' Arguments**

The government argues Mr. Miranda-Rivera should remain detained because he faces a substantial prison sentence and maintains strong ties to Mexico, as noted above. *See* Opp'n at 7.

The government theorizes that Mr. Miranda-Rivera could liquidate all his assets in Mexico and pay back his loved ones for the bonds they post after he absconds. *Id.* at 8. The government points to one case in which a court found the combined factors of having a prior criminal history, facing a lengthy prison sentence, having strong ties to Mexico, and hiding a significant amount of cash close to the total amount of bail set by the court established the risk of flight by a preponderance of the evidence. Opp'n at 6 (citing *United States v. Mendoza*, No. 12-4710, 2014 WL 310799, at *4 (S.D. Cal. Jan. 28, 2014)). Unlike the defendant in *Mendoza,* while Mr. Miranda-Rivera is facing a lengthy sentence, there is no indication he is hiding liquid assets and he does not have a history of prior convictions for serious crimes anything akin to the ones with which he is currently charged. Also unlike the defendant in *Mendoza*, there are no reports that Mr. Miranda-Rivera is planning an attempt to flee. *See id.* at *2 ("[A] statement was made that the word on the street, if you will, was that the Defendant intended to flee to Mexico if he is released from custody.").

In addition to arguing that Mr. Miranda-Rivera's proposed release plan overcomes any risk of flight, the defense points to a significant number of cases in which defendants facing similar charges were granted pretrial release; in several of these cases the defendants were undocumented. *See generally* Suppl. Br., ECF No. 30. The release orders in most of these cases do not disclose the courts' balancing of the various factors, particularized to a given defendant, that informed the ultimate decision to grant release. *Id.* (*see, e.g.*, *United States v. Gregory Thomas Phelan*, 2:13-cr-350, Order for Release, ECF No. 12; *United States v. Jesus Ivan Rendon Gutierrez*, 2:20-cr-019, Order for Release, ECF No. 19; *United States v. Yuliana Gaytan-Ignacio*, 1:19-cr-025, Order Setting Conditions of Release, ECF No. 17). The general point that the nature of criminal charges and immigration status alone are not dispositive is well-taken, however.

Here, the court considers the individualized aspects of Mr. Miranda-Rivera's case in light of the factors guiding the court's decision on the pending motion.

**C.    Discussion of Relevant Factors**

As explained below, after careful consideration, the court finds the relevant factors weigh in favor of release.

6

Mr. Miranda-Rivera is charged with maintaining an illegal marijuana grow site on federal property. While the primary charge and the others as well are serious, and one charge invokes a mandatory minimum sentence, the court tempers its consideration of the factual allegations supporting the charges given the presumption of innocence afforded Mr. Miranda-Rivera at this stage of his case. *Hir*, 517 F.3d at 1090. Mr. Miranda-Rivera's arrest while possessing a loaded, unregistered and unmarked pistol, is of concern, but the government does not argue this factor supports a possible danger to the community. Opp'n at 3, 6, 7 n.1. The government does point to statements Mr. Miranda-Rivera's co-conspirators have made against him and some photographic and video evidence not currently before the court. *Id.* at 7 n.1. Even without seeing this evidence, on balance, the court finds the nature of the charges Mr. Miranda-Rivera is facing weigh against release.

In considering Mr. Miranda-Rivera's history and characteristics, the court notes he reentered this country without authorization and has lived here for the past three years; he is currently seeking asylum. *See* Mot. at 5. He has substantial family ties and community ties here, primarily his girlfriend, sister, brother-in-law and other relatives; a number of these persons are prepared to post bond to secure his release, as reviewed above. *See* Mot. at 5–6. He also has similar close ties to Mexico, with family members still living there, including his minor children all of whom he supports and with whom he maintains weekly telephone contact. These factors would offset each other but for Mr. Miranda-Rivera's efforts to obtain asylum, which suggest he has a sincere desire to remain in this country. As of the date of the court's hearing on this motion, he was actively pursuing his matter in immigration court and had not abandoned his efforts. By a hair, the court finds these factors weigh in favor of granting release.

Mr. Miranda-Rivera has a degree in agricultural engineering. Mot. at 2, 5. Should he be released, however, there is no guarantee he would be granted work authorization or be able to obtain lawful employment, given his undocumented status; therefore he likely will need to rely on others to support him. In fact, his family and friends are willing to provide financial support; his girlfriend is prepared to offer him a place to live. Mot. at 12. The court can impose a condition of home detention, backed by location monitoring. Given that Mr. Miranda-Rivera has identified

a suitable place to reside and persons who will provide for him during release, this factor weighs slightly in favor of release.

Mr. Miranda-Rivera has no documented history of drug or alcohol abuse, and he denies any substance abuse issues. This aspect of his personal history does not weigh against release.

Mr. Miranda-Rivera has a sparse criminal history. He has no prior convictions. Mot. at 6. However, in 2019 he received a citation for driving while intoxicated in Texas, and failed to appear in court to answer the citation. Opp'n at 8. While he was removed from the country before he could appear, he has not attempted to resolve the matter since returning to the United States and is facing an outstanding warrant in the case. *Id.* As clarified at hearing, neither counsel believes he is likely to be arrested on that warrant if he is released to a residence in California. The defense acknowledges that Mr. Miranda-Rivera will need to resolve this matter at some point, when he is able. Given the lack of a prior serious felony history, but the prior driving citation, the court finds this information weighs slightly against release. The court can however require that, as a condition of pretrial release, Mr. Miranda-Rivera clear his citation in Texas.

On balance, the question of whether or not Mr. Miranda-Rivera poses a flight risk is a very close call. Given the presumption in light of the charges, the court finds the government has established a risk of flight by a clear preponderance of the evidence. Given the defendant's production of a robust release plan, the question then becomes whether the government has met its burden of persuasion to show "no condition or combination of conditions will reasonably assure the safety of any other person and the community . . . by clear and convincing evidence." 18 U.S.C. § 3142(e)(2). In considering whether the government has met this burden, the court bears in mind that "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 67 F.2d at 1406 (citations omitted). "To give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases, applying a 'clear preponderance' test." *United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (citing *id.*). Here, the court finds that the doubts regarding whether Mr. Miranda-Rivera ought to be released should be resolved in his favor, applying the clear preponderance test.

The amount of bond Mr. Miranda-Rivera offers, including a meaningful amount of secured bond, is significant. As noted, four persons in addition to Mr. Miranda-Rivera are offering bonds totaling more than $100,000. Additionally, Mr. Miranda-Rivera's willingness to submit to location monitoring weighs in favor of his release, given that this monitoring will track his movements and allow the court to know, through its Pretrial Services office, whether Mr. Miranda-Rivera is taking steps to flee.

The question of whether a suitable third party custodian is available has taken some time to answer, with significant efforts expended by the Pretrial Services Officer to confirm information provided by the defense. The court agrees with the Officer's determination that a placement with either of two possible custodians, Jose Mendoza or Javier Davalos, is not appropriate. Mr. Mendoza, who is in a relationship with Mr. Miranda-Rivera's mother and has only known Mr. Miranda-Rivera for a few months, does not have a sufficient history or relationship with him to support fulfilling all the responsibilities of a custodian. The details of the proposed placement with Mr. Davalos, namely a small rental where Mr. Miranda-Rivera would live with Mr. Davalos, have not been confirmed. The court finds, however, that Lorena Silva is able to serve as a third-party custodian, notwithstanding her pending U Visa application. The court is not aware of any authority requiring that a third-party custodian be a citizen or lawfully residing in the United States. Given that Ms. Silva is seeking the right to reside in this country through the legal process available to her, and has provided full information on her residence, employment and family members in the same community, the court finds she presents as sufficiently reliable to fulfill the custodial role.

Accordingly, the court grants Mr. Miranda-Rivera's motion and releases him on conditions as set forth below.

**IV. CONCLUSION**

Mr. Miranda-Rivera's motion to revoke the detention order is **granted.**

He shall be released to the third party custody of Irma Lorena Silva Mendoza, subject to standard conditions of pretrial release, as well as the special conditions of release attached to this order and incorporated herein. Prior to his release, Mr. Miranda-Rivera and Ms. Silva as third-

party custodian shall sign all the release paperwork provided by the Pretrial Services Officer. Also prior to his release, Mr. Miranda-Rivera shall post bond in the total amount of $103,000 as follows:

- $10,000 secured by cash posted by his brother-in-law, Carlos Elias Garcia Mendoza.
- A bond secured by the title to Monica Cisneros's vehicle, a black 2012 Honda Accord, with the value estimated at $12,000.
- A bond secured by the vehicle co-owned by Lorena Silva and her brother Aureliano Silva Mendoza, a 2006 Nissan Titan, with the value estimated at $6,000.
- A $50,000 unsecured bond signed by Monica Cisneros.
- A $25,000 unsecured bond signed by Francisco Javier Davalos.

Mr. Miranda-Rivera shall co-sign the bonds offered by Ms. Cisneros and Mr. Davalos.

This order resolves ECF No. 27.

IT IS SO ORDERED.

DATED: May 14, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE